STATE OF NORTH CAROLINA  　　　　　　　　IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
COUNTY OF DURHAM　　　　　　　　　　　　FILE NO. 16 CVS _____

[DURHAM COUNTY FILED SEP 14 2016 AT 4:06 O'CLOCK _ BY ___ CLERK OF SUPERIOR COURT]

| | | |
|---|---|---|
| RITA STONE, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | [Served with First Request for Admissions, |
| v. | ) | First Set of Interrogatories, and First Request |
| | ) | for Production of Documents] |
| OPTIMUM OUTCOMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff Rita Stone for her Complaint against Defendant Optimum Outcomes, Inc., alleging and saying as follows:

## PARTIES

1. Plaintiff Rita Stone (hereinafter "Ms. Stone") is a citizen and resident of Durham County, North Carolina and is not an infant, incompetent, nor in the military service of the United States.

2. Defendant Optimum Outcomes, Inc. (hereinafter "Optimum Outcomes") is corporation organized and existing under and by virtue of the laws of the State of Illinois with a principal place of business in Downers Grove, Illinois.

3. Defendant is regularly engaged in the business of collecting consumer debts and is licensed to collect such debts by the North Carolina Department of Insurance.

## JURISDICTION AND VENUE

4. Personal jurisdiction is proper in this Court pursuant to N.C. Gen. Stat. § 1-75.4.

5. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82.

6. This Court has subject matter jurisdiction under, *inter alia*, N.C. Gen. Stat. §§ 7A-240 and 7A-243.

## FACTUAL ALLEGATIONS

7. The foregoing allegations are incorporated by reference and realleged herein.

8. Optimum Outcomes is a hospital receivables management company that provides collection services for outstanding medical debts.

9. Upon information and belief, Optimum Outcomes partners with, contracts with, or otherwise uses a telephone system that has the capacity to dial telephone numbers without human intervention, including fully-automatic mode whereby prerecorded messages are played when a call recipient answers the telephone (the "Telephone System").

10. Optimum Outcome's Telephone System is "automatic telephone dialing system" or "auto-dialer" as defined by 47 U.S.C. § 227(a)(1) (hereinafter the "Auto-dialer System") and/or an "artificial or prerecorded voice" as defined by 47 U.S.C. § 227(b)(1)(A) (hereinafter the "Artificial Voice" and "Prerecorded Voice," respectively) to assist with its telephonic collection attempts.

11. Upon information and belief, the Auto-dialer System operates by simultaneously dialing two or more telephone numbers for each marketing, collection, or customer service representative that is working at any given time for Optimum Outcomes. When a consumer answers the telephone, the Auto-dialer System transfers the telephone call to a representative of Optimum Outcomes.

12. Upon information and belief, if the Auto-dialer System makes multiple connections at the same time, there are oftentimes no representatives available for the call. In those occasions, the Auto-dialer System will hang onto the call for a period of time while playing music while waiting for a representative to become available.

13. Even when a person answers every Auto-dialer System telephone call received from Optimum Outcomes, the person, through no fault of their own, could still be called multiple times within a day without engaging in conversation with a live representative of Optimum Outcomes.

14. Upon information and belief, the number of Auto-dialer System telephone calls received by a person from Optimum Outcomes in a day is not dependent on the attempts of that person to answer the Auto-dialer System's telephone calls.

15. Upon information and belief, the Auto-dialer System is a "predictive dialer" and the telephone calls made to a consumer in a day by Optimum Outcomes is directly related to, among other things: a) the number of Optimum Outcomes representatives working on that day, b) the number of telephone calls Optimum Outcomes representatives engaged in on that day, c) the average time that Optimum Outcomes representatives spend on each telephone call that day, d) the number of telephone calls the Auto-dialer System is set to make simultaneously on that day, e) the number of calls the Auto-dialer System is set to make within a given period of time on that day, and f) other settings for the Auto-dialer System, such as the abandonment of answered telephone calls. None of these are within the control of any person receiving the calls.

16. Optimum Outcomes controls the making of the telephone calls.

17. Upon information and belief, the number of telephone calls that are received by a person in a day is based on variables that can and do change on a daily basis, that are beyond the control of a person receiving calls, and that are in the total control of Optimum Outcomes.

2

18. Upon information and belief, telephone number (877) 959-9819 is registered to Optimum Outcomes (hereinafter "Defendant's Number").

19. At all times relevant herein, Ms. Stone possessed a cellular telephone with a telephone number of (919) 627-5819 (the "Cellular Telephone Number").

20. At all relevant times, the account for the Cellular Telephone Number was billed and provided to Ms. Stone through a cellular service provider.

21. Ms. Stone is a retired state of North Carolina employee subsisting on a fixed income. In addition, Ms. Stone works approximately two (2) days at Duke University Hospital ("Duke Hospital") as an administrative assistant.

22. In October of 2015, Ms. Stone underwent breast cancer surgery at Duke Hospital in Durham, North Carolina.

23. In November of 2015, Duke Hospital detected additional cancer in her breast that necessitated a second surgery.

24. In January of 2016, Ms. Stone underwent a third surgery because additional "abnormal tissue" was detected and needed to be removed.

25. The three surgeries and requisite treatments were very expensive and, despite having health insurance, Ms. Stone had a balance with Duke Hospital of approximately $12,000.00 (the "Debt").

26. Recovering from the surgeries and multiple radiation treatments was challenging for Ms. Stone and her family and required a significant amount of rest and rehabilitation.

27. Beginning around February 2016, Ms. Stone began making payments towards the Debt directly to Duke Hospital in an amount between $50.00 and $100.00 per month.

28. However, despite making monthly payments towards the Debt directly to Duke Hospital, the Debt was cosigned, placed, or otherwise transferred from Duke Hospital to Optimum Outcomes for collection.

29. Beginning in January of 2016, Ms. Stone began receiving telephone calls on her personal Cellular Telephone Number from Optimum Outcomes with regard to the Debt (the "Telephone Calls").

30. These Telephone Calls were made using Optimum Outcomes' Auto-dialer System and/or Artificial Voice or Prerecorded Voice.

31. In approximately March of 2016, Ms. Stone spoke with a representative of Optimum Outcomes and clearly and unambiguously requested Optimum Outcomes' representative to stop calling her (the "Initial Revocation"). Specifically, Ms. Stone informed Optimum Outcomes' representative that she was at home recovering from her third breast surgery and

3

instructed Optimum Outcomes to stop calling her.

32. After the Initial Revocation, the representative of Optimum Outcomes stated it would cease its Telephone Calls, however, Optimum Outcomes continued its collection attempts using the Auto-dialer System and/or Artificial Voice or Prerecorded Voice.

33. Ms. Stone requested Optimum Outcomes to stop calling her on approximately three (3) separate occasions.

34. Notwithstanding Ms. Stone's requests for Optimum Outcomes to cease its telephone collection attempts, Optimum Outcomes did not stop contacting her telephone using the Auto-dialer System and/or Artificial Voice or Prerecorded Voice.

35. Occasionally, when Ms. Stone answered the Telephone Calls from Defendant's Numbers, she would recite a greeting, such as "Hello," and would thereafter hear music oftentimes followed by a substantial wait prior to connecting to a representative.

36. Ms. Stone received numerous calls from Optimum Outcomes Auto-dialer System and/or Artificial Voice or Prerecorded Voice after she requested Optimum Outcomes to cease its Telephone Calls.

37. These Telephone Calls were disruptive to Ms. Stone's recovery.

38. The Telephone Calls from Optimum Outcomes to Ms. Stone's Cellular Telephone Number have caused Ms. Stone to experience anxiety, mental stress, worry, frustration, and other mental and emotional anguish, particularly when Ms. Stone was recovering from her multiple surgeries.

## FIRST CAUSE OF ACTION
(Violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(b))

39. The foregoing allegations are incorporated by reference and realleged herein.

40. At all times relevant herein, Optimum Outcomes contacted Ms. Stone on a number assigned to a cellular telephone service in violation of 47 U.S.C § 227(b)(1)(A), by using an "automatic telephone dialing system," as that term is defined by 47 U.S.C. § 227(a)(1).

41. The Telephone Calls from Optimum Outcomes to Ms. Stone were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

42. Each telephone call made in negligent violation of the TCPA entitles to Ms. Stone to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

43. Ms. Stone never provided her consent to Optimum Outcomes to be contacted on her cellular telephone. Furthermore, Ms. Stone clearly and unambiguously instructed Optimum Outcomes to cease all Telephone Calls to her on at least three (3) separate occasions.

4

44. Optimum Outcomes continued to place automated Telephone Calls to Ms. Stone's cellular telephone knowing there was no consent to continue the calls or knowing that any consent previously granted was withdrawn. As such, Optimum Outcomes willfully and/or knowingly violated 47 U.S.C. § 227(b).

45. As a result of Optimum Outcomes' willful and/or knowing violation of 47 U.S.C. § 227(b)(1)(A), and pursuant to 47 U.S.C. § 227(b)(3), Ms. Stone is entitled to increased statutory damages in an amount not greater than $1,500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

46. As a direct and proximate result of Optimum Outcomes' breach of 47 U.S.C. § 227, Ms. Stone has sustained actual damages, including but not limited to, mental and emotional pain and anguish, and is further entitled to statutory damages in an amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00), and a permanent injunction preventing Optimum Outcomes from further contacting Ms. Stone.

## SECOND CAUSE OF ACTION
(Violation of Federal Fair Debt Collection Practices Act; 15 U.S.C. § 1692, *et seq.*)

47. The foregoing allegations are incorporated by reference and realleged herein.

48. Optimum Outcomes is a "debt collector," as defined by the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6).

49. Ms. Stone is a "consumer," as defined by the FDCPA, 15 U.S.C. § 1692a(3).

50. The Debt is a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

51. Optimum Outcomes, or an agent(s) of Optimum Outcomes, has attempted to collect debt in violation of 15 U.S.C. § 1692d, in that it engaged in annoying, abusive, and harassing conduct towards Ms. Stone in connection with the collection of the Debt.

52. Optimum Outcomes, or an agent(s) of Optimum Outcomes, has attempted to collect debt in violation of 15 U.S.C. § 1692d(5) in that Optimum Outcomes caused Ms. Stone's phone to ring repeatedly and engaged Ms. Stone in telephone conversations with the intent to annoy and harass.

53. Optimum Outcomes, or an agent(s) of Optimum Outcomes, has attempted to collect debt in violation of 15 U.S.C. § 1692f in that Optimum Outcomes used unfair and unconscionable means in attempting to collect the Debt.

54. Optimum Outcomes, or an agent(s) of Optimum Outcomes, violated 15 U.S.C. § 1692g(a) in that Optimum Outcomes failed to send Ms. Stone an initial letter within five (5) days of its initial contact with Ms. Stone.

55. As a result of Optimum Outcomes' unlawful attempts to collect debt, Ms. Stone is entitled to actual and statutory damages for each week Optimum Outcomes' violations took place, as

5

well as her reasonable attorneys' fees, for a total amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

### THIRD CAUSE OF ACTION
(Violation of the North Carolina Collection Agency Act; N.C.G.S. § 58-70-1, *et seq.*)

**56.** The foregoing allegations are incorporated by reference and realleged herein.

**57.** Optimum Outcomes is a debt "collection agency," as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

**58.** Ms. Stone is a "consumer," as that term is defined by N.C.G.S. § 58-70-90.

**59.** The Debt is a "debt," as that term is defined by N.C.G.S. § 58-70-90.

**60.** Optimum Outcomes, or an agent(s) of Optimum Outcomes, has attempted to collect debt in violation of N.C.G.S. § 58-70-100, in that it engaged in annoying, abusive, and harassing conduct towards Ms. Stone in connection with the collection of the Debt.

**61.** As a result of Optimum Outcome's unlawful attempts to collect debt, Ms. Stone is entitled to actual and statutory damages for each week Optimum Outcome's violations took place, as well as her reasonable attorneys' fees, for a total amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

### FOURTH CAUSE OF ACTION
(Negligence)

**62.** The foregoing allegations are incorporated by reference and realleged herein.

**63.** Optimum Outcomes had the following duties with respect to Ms. Stone:

   a. To refrain from repeatedly and incessantly calling Ms. Stone so as to become harassing, intimidating, and annoying;

   b. To have Ms. Stone's express consent prior to each occasion that Optimum Outcomes called the Telephone Number;

   c. To refrain from calling Ms. Stone after being placed on notice that she did not wish to continue being called on her cellular telephone by Optimum Outcomes; and

   d. To have available an individual on its Telephone Calls available to speak with Ms. Stone.

**64.** Optimum Outcomes breached its duties to Ms. Stone by, among other things:

   a. Repeatedly and incessantly calling Ms. Stone so as to harass, intimidate, and annoy her;

6

    b. Repeatedly calling Ms. Stone at the Telephone Number without obtaining her express consent prior to each telephone call;

    c. Calling her even after being placed on notice that it did not have consent to do so and that she did not wish to be called on her cellular telephone by Optimum Outcomes; and

    d. Not having available an individual prepared to speak with Ms. Stone upon the answering of Optimum Outcomes' Telephone Calls.

65. Optimum Outcomes' aforesaid actions directly and proximately caused Ms. Stone the loss of use of her personal property, anxiety, annoyance frustration and other mental and emotional anguish.

66. The aforesaid acts of Optimum Outcomes were in violation of its statutory duties under the Telephone Consumer Protection Act such that its conduct constitutes negligence per se. Further, the aforesaid conduct of Optimum Outcomes was in violation of its common law and general duty not to invade the privacy and seclusion of others, including Ms. Stone, such that its conduct constitutes ordinary negligence.

67. As a direct and proximate result of Optimum Outcomes' negligence, Ms. Stone has sustained damages in an amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

## FIFTH CAUSE OF ACTION
(Gross Negligence)

68. The foregoing allegations are incorporated by reference and realleged herein.

69. Optimum Outcomes' aforesaid negligence was of a willful and wanton nature, in that its Auto-dialer System and/or Artificial Voice or Prerecorded Voice is purposefully designed to harass, intimidate, and annoy the recipients of Telephone Calls, including Ms. Stone, and Optimum Outcomes intended to harass, intimidate, and annoy Ms. Stone.

70. Ms. Stone is entitled to exemplary damages in an amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

## SIXTH CAUSE OF ACTION
(Invasion of Privacy by Intrusion into Seclusion)

71. The foregoing allegations are incorporated by reference and realleged herein.

72. Optimum Outcomes intruded into the seclusion of Ms. Stone by persistently causing her telephone to ring over the course of several months.

73. Optimum Outcomes' actions as set forth in Ms. Stone's above allegations would be highly offensive to any reasonable person.

7

74. Optimum Outcomes' intrusion into Ms. Stone's seclusion caused her to suffer the loss of use of her personal property, anxiety, annoyance, frustration, and other mental and emotional anguish.

75. As a direct and proximate result of Optimum Outcomes' intrusion into Ms. Stone's seclusion, she has suffered damages in an amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

76. Further, Optimum Outcomes' intrusion into Ms. Stone's seclusion was malicious or, at a minimum, willful and wanton, such that Ms. Stone is entitled to punitive damages in an amount in excess of Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

WHEREFORE, having set forth her causes of action herein, Plaintiff Rita Stone prays the Court for the following relief:

1. That Plaintiff have and recover compensatory, punitive, actual, and statutory damages of Defendant in an amount in excess of $25,000.00;

2. That Plaintiff recover their reasonable attorneys' fees incurred in this matter;

3. That the costs of this action be taxed to Defendant;

4. For a trial by jury on all issues so triable; and,

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 12th day of September, 2016.

MAGINNIS LAW, PLLC
*Counsel for Plaintiff Rita Stone*

BY: *Karl S. Gwaltney*
KARL S. GWALTNEY
N.C. State Bar No. 45118
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Tel: (919) 480-8526
Fax: (919) 882-8763
kgwaltney@maginnislaw.com
emaginnis@maginnislaw.com

8